COLE, Judge.
On July 20, 1973, at approximately 5:15 P. M., an accident occurred on Louisiana Highway 1028 in Livingston Parish involving a truck owned by Major Robinson and driven by Mazzie Rudison and an automobile driven by Bernice B. Pearson. The Rudison vehicle was proceeding in a southerly direction and the Pearson vehicle was proceeding in a northerly direction. Traveling with Mrs. Pearson in the automobile was her husband, Hollis Pearson, and their eleven-month-old son. As a result of injuries sustained in the accident, Mrs. Pearson died.
The trial court rendered judgment against the Department of Highways and in favor of Hollis Pearson, individually, in the sum of $60,000 and on behalf of his minor son, for $45,000. Judgment was also rendered against the Department of Highways in favor of John Kenneth Graham and Aline Graham, Mrs. Pearson’s children by a previous marriage, for $32,500 each. Judgment was additionally rendered against the Department of Highways and in favor of Commercial Union Insurance Company, Pearson’s subrogee, for the property damage sustained. All claims against Robinson, Rudison and their alleged insurers, were dismissed. The Department of Highways appeals from the judgment rendered. We affirm.
Louisiana Highway 1028, a narrow, two-lane, hard-surfaced road, curves at the approximate location of the accident. At the time of the accident, approaching the curve in the northbound lane there existed a large hole where the hard surface had been torn up. Photographs indicated that the hole *713 covered practically the entire width of the northbound lane. The depth of the hole was estimated by witnesses to be from over six inches to fifteen inches. The hole was unmarked and shells had been used in an apparent attempt to effect a temporary repair of the defect. However, photographs taken at the scene indicated that the shells had been extensively pushed out of the hole by traffic.
At the time of the accident there was a hard rain characterized as a storm which caused both vehicles to reduce their speed to approximately thirty to thirty-five miles per hour. Both vehicles had their lights on at the time of the accident.
Rudison testified that Mrs. Pearson tried to “duck” the hole which, according to him, covered her whole side of the road. He said that when she tried to get back on her side, her vehicle started sliding sideways, colliding with his truck on his side of the road. He further testified that there was nothing he could do to avoid the accident. He stated that although it appeared to him that she attempted to miss the hole, she may have, in fact, hit part of it. His testimony is substantiated by the fact that the front of his vehicle collided with the left side of the Pearson vehicle.
Hollis Pearson testified that his only recollection of the accident was that he saw the Rudison vehicle and that it “seemed” that it was over the yellow line. He claimed that he warned his wife and grabbed the baby. He further testified that he did not see the hole until after the collision. When pressed by opposing counsel as to the movement of the truck prior to collision, he said he could not swear that it crossed the yellow line. Mr. Pearson attributed his lack of specificity about the details of the accident to the fact that he was paying attention to the baby and not to his wife’s driving. The evidence preponderates to establish that Mr. Pearson had been indulging in the consumption of alcohol prior to the accident.
The physical evidence at the scene was not of probative value with respect to establishing a point of collision. James Jackson, a state trooper who investigated the accident, testified that he could not determine the “point of collision” because of the lack of debris at the scene. However, he said the “area” of collision appeared to be in the northbound (Pearson) lane. Some broken glass was located in the northbound lane about three feet from the shoulder. Also, Mr. Pearson, by his own admission, removed some pieces of chrome from the highway. Rudison testified that the chrome moved by Pearson was in the southbound (Rudison) lane.
State Representative Julius Blount testified that prior to the accident, upon a complaint by one of his constituents, he contacted the Livingston Parish Superintendent for the Department of Highways and personally escorted him to the location of the hole. At the time of the accident, however, no attempt to repair the hole in the road, beyond the earlier placement of shells in it, had been accomplished. Also, no attempt had been made to mark the road to warn motorists of the hazard. The record discloses that approximately three weeks earlier a small car had hit the hole causing it to overturn and injure its occupants. Appellant concedes that the hole was there, that it constituted a defect, and that actual notice of the defect had been received prior to the accident.
Although the trial court did mot provide written reasons for judgment, it is evident that it determined that the accident was caused by the hole in the highway and not by any negligence on the part of either Rudison or Pearson. The Department of Highways contends that the trial court erred in determining that the hole in the highway was a cause-in-fact of the accident. In the alternative, the Department claims that the court erred in failing to find contributory negligence on the part of Mrs. Pearson barring the recovery of the plaintiffs herein. It is well established that:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should *714 not disturb this factual finding in the absence of manifest error. * * * ” (Canter v. Koehring, 283 So.2d 716, 724 [La. 1973])
The trial court in the instant case obviously considered Rudison’s testimony as to the cause of the accident to be credible, especially in face of the obvious inferences drawn by the proximity of the accident to the large, dangerous hole in the northbound lane. On the other hand, the trial court apparently disregarded the unsubstantiated testimony of the state trooper as to the “area” of collision. Also, the testimony of Mr. Pearson was vague as to the details of the accident and was not conducive to instill in the trier of fact a belief in its reliability. Certainly, it was not established by a preponderance of the evidence that Rudison was negligent.
There is reasonable evidence in the record upon which to base a conclusion that the hole was the cause-in-fact of the accident. Whether Mrs. Pearson lost control of her vehicle after hitting the hole or after attempting at the last moment in the rainstorm to avoid the hole, does not affect the question of causation.
In Doucet v. State, Department of Highways, 309 So.2d 382 (La.App. 3rd Cir. 1975), the Court said:
“ * * * The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. It is liable for damages only when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. [Citations omitted]” (309 So.2d at 385)
The record contains sufficient evidence to establish that a hazardous and obviously dangerous condition existed and that the conduct of Mrs. Pearson was reasonably careful. Mrs. Pearson was driving slowly in a hard rain. Visibility was impaired and it was not an unreasonable response for her to swerve the vehicle at the last moment when confronted suddenly with such an obviously dangerous hazard which covered practically her entire lane of travel. Moreover, it is clear that the Department failed within a reasonable time after notice to correct the hazardous condition.
The Department also contends that the amounts awarded plaintiffs in damages are excessive. The evidence establishes that Mrs. Pearson was thirty-seven years old and employed as a school bus driver by Livingston Parish earning $300 per month. At the time of the accident, she was on leave because of the birth of her baby but was planning to go back to work.
Aline and John Graham were approximately sixteen and seventeen years old, respectively, and were living with their mother at the time of her death. Because they had lived alone with her for several years prior to her remarriage to Hollis Pearson, they had developed a very close relationship. Moreover, they had been and were being supported by their mother. After her death, they had to commence living with their grandmother and to discontinue plans for college.
In connection with the survival action, it was shown that Mrs. Pearson lived for two days after the accident, during which time she was in considerable pain from a broken leg and experienced pain and difficulty breathing from the extensive injuries to her left side.
The evidence establishes that the awards of the trial court are not an abuse of the discretion granted it in the assessment of damages. La.-C.C. art. 1934 (3); Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976).
For the foregoing reasons, we conclude that the judgment of the trial court is not manifestly erroneous and, therefore, is affirmed. The costs of these proceedings are assessed to the appellant to the extent permissible by law.
AFFIRMED.