## William & Charmaine Rule v. New Hampshire-Vermont Health Service

[477 A.2d 622]

No. 83-012

Present: Billings, C.J., Hill, Peck and Gibson, JJ., and Keyser, J. (Ret.), Specially Assigned

Opinion Filed April 13, 1984

Motion for Reargument Denied May 9, 1984

*Susan F. Eaton* of *Langrock Sperry Parker & Wool*, Middlebury, for Plaintiffs-Appellees.

*Leslie C. Pratt* and *Robert H. Opel* of *Paterson, Walke & Pratt, P.C.*, Montpelier, for Defendant-Appellant.

*Gibson, Noble & Goodrich*, Montpelier, for amicus curiae Vermont Health Service Corporation.

**Billings, C.J.** This is an interlocutory appeal, pursuant to V.R.A.P. 5(b)(1), from an order of the Addison Superior Court. That court found the defendant-appellant liable to the plaintiffs, in a class action suit, for the refund of insurance premiums paid to Eastern Seaboard Dealers Service (Eastern), a trade association, for prepaid health care benefits (the Plan) offered by the defendant. The plaintiffs also sued for damages, but, by agreement of the parties, the question of damages was reserved for a later hearing.

The trial court certified three questions, but in view of our disposition of the first certified question, it is unnecessary for us to reach the remaining two. The question presented is:

(a) Based upon the evidence in the case, did the Court properly conclude that Eastern Seaboard was an agent of defendant as to the plaintiffs?

The court made extensive findings of fact; the defendant does not contest these findings and therefore they are binding. *DeLance* v. *Hennessey*, 137 Vt. 214, 216, 401 A.2d 903, 904 (1979); *Druke* v. *Town of Newfane*, 137 Vt. 571, 573, 409 A.2d 994, 995 (1979). The conclusions of the court respecting the liability of the defendant on a theory of agency "must stand if the findings of fact fairly and reasonably support them." *Druke, supra.*

The court found that Eastern was in the business of promoting and protecting the needs of its membership, primarily those engaged in the operation of gasoline service stations. In 1970 an Eastern representative approached the plaintiffs, operators of a family-owned service station, and solicited their membership in the association. Membership entitled the plaintiffs to a number of service station related services, as well as Blue Cross-Blue Shield group health insurance. Plaintiffs were interested in membership because it was only through group insurance that they could obtain major medical coverage. Also, group insurance rates were less expensive than nongroup rates.

Plaintiffs joined Eastern in August, 1970, and were enrolled in the Plan's Eastern group policy No. 9741. Membership cards were sent by the defendant to the plaintiffs setting forth the premium rates for the type of coverage chosen by the plaintiffs. Literature, printed by the defendant, explaining the Plan's benefits and coverage, and identifying the Eastern group policy with the defendant's name and trademark, was given to Eastern by the defendant for distribution to the plaintiffs. Plaintiffs also received subscriber certificates, issued by the defendant, that indicated, among other things, that the remitting agent, in this case Eastern, was the agent of the plaintiffs, as subscribers, and not of the defendant. Both oral and written instructions were provided Eastern, by the defendant, concerning the duties of a remitting agent.

The court further found that plaintiffs paid their Plan's group insurance premium directly to Eastern, by check made payable to Eastern, on a quarterly basis, in response to notices

of payment due sent by Eastern. Although plaintiffs paid their premiums to Eastern on a quarterly basis, Eastern paid the defendant on a monthly basis. The defendant knew that Eastern was billing its subscribers quarterly, but did not require an accounting from Eastern respecting its use of subscriber money. The plaintiffs were not familiar with Eastern's premium remitting procedures. Although plaintiffs always paid their premiums to Eastern in a timely fashion, the court found that Eastern consistently failed, over a six year period, to remit the group premium to the defendant when due. Actual claims for benefits were submitted by the plaintiffs directly to the defendant.

In January, 1977, the defendant cancelled Eastern group policy No. 9741 for failure to remit the January, 1977, group premium when due. Eastern had already received and deposited plaintiffs' quarterly premium payment, covering January through March, 1977. Defendant informed the plaintiffs by letter of the cancellation of their group account due to Eastern's untimely payment history. This was the first notice that the plaintiffs had of Eastern's failure to keep the group's account current.

The findings "fairly and reasonably" support the court's conclusion that, "as to the receipt and forwarding of premiums, . . . Eastern was the agent of the defendant." Vermont has no case law on the issue whether the remitting agent of a group insurance policy is the agent of the insurer, or the agent of the insured. Defendant contends that under the common law of agency, the court's finding of an agency relationship is wrong as a matter of law. We do not agree. The existence of an agency relationship depends upon an agreement between the principal and the agent. 3 Am. Jur. 2d *Agency* § 17. Such an agreement does not depend on the existence of an express contract, but can be demonstrated from the circumstances of the particular situation, or the conduct of the parties. *Young* v. *Lamson*, 121 Vt. 474, 477, 160 A.2d 873, 875–76 (1960). Whether an agency relationship exists depends upon an examination of the facts of each case. *Blue Cross-Blue Shield* v. *Thornton*, 56 Ala. App. 668, 678, 325 So. 2d 187, 191 (1976). Here, Eastern performed an administrative task, the collection and remitting of the group's policy

premium, for the benefit of the defendant. Without Eastern's administrative assistance, the defendant itself would have incurred the costs of the collection of the premiums. *Elfstrom* v. *New York Life Insurance Co.*, 67 Cal. 2d 503, 510, 432 P.2d 731, 737, 63 Cal. Rptr. 35, 41 (1967). Also, defendant was in a better position than the plaintiffs to control the actions of Eastern with respect to the enrollment and administration of the group policy. *Hirsch* v. *Travelers Insurance Co.*, 153 N.J. Super. 545, 553, 380 A.2d 715, 719 (1977). Eastern received printed materials and instructions from the defendant concerning the administration, enrollment and reporting functions required of a group policy remitting agent. The court found that plaintiffs dealt solely with Eastern in the payment of their group policy premiums, and had no knowledge of the accounting procedures between Eastern and the defendant. *Elfstrom* v. *New York Life Insurance Co.*, *supra*, 67 Cal. 2d at 513, 432 P.2d at 738, 63 Cal. Rptr. at 42.

■ Defendant also points to the disclaimer in the subscriber certificates, issued to the plaintiffs, expressly providing that the remitting agent is the agent of the subscriber rather than the insurer. As the court correctly concluded, the express disavowal of an agency relationship was "inconsistent with the realities of the arrangement." Agency is a legal relationship that does not depend on the label that the parties to the relationship give to it. See *Piper* v. *Oakland Motor Co.*, 94 Vt. 211, 214, 109 A. 911, 912 (1920) ("whether an agency does in fact exist . . . depends upon the . . . arrangement under which the business is conducted, and it is . . . immaterial [what] the parties denominate the arrangement . . . .").

*The first certified question is answered in the affirmative; remanded for determination of damages.*